# United States Tax Court

T.C. Memo. 2024-28

RAMESH C. KAPUR AND CHANDA KAPUR,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

—————

Docket No. 14017-21.                                      Filed March 12, 2024.

—————

*Jeremy M. Fingeret*, *Jefferson H. Read*, and *Matthew S. Reddington*, for petitioners.

*Jonathan E. Behrens*, *Kerrington A. Hall*, and *Allison N. Kruschke*, for respondent.

## MEMORANDUM OPINION

PUGH, *Judge*: This case concerns petitioners' entitlement to Credits for Increasing Research Activities (research credits) under section 41.[1] The Internal Revenue Service (respondent) disallowed claimed research credits that flowed through Kapur & Associates, Inc. (KAI), an S corporation, to petitioners during tax years 2014, 2016, 2017, and 2018 (years in issue).

Petitioners' claimed research credits and respondent's determinations for the years in issue (in a notice of deficiency dated April 12, 2021) are summarized below.

_____

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

[*2]

| Year | Claimed Research Credit | Deficiency | Penalty § 6662(a) |
|---|---|---|---|
| 2014 | $107,375 | $107,375 | — |
| 2016 | 52,214 | 30,916 | — |
| 2017 | 35,935 | 35,935 | $7,187 |
| 2018 | 43,434 | 12,422 | — |
| **Total** | **$238,958** | **$186,648** | **$7,187** |

Before the Court is petitioners' Motion for Protective Order.[2] The parties dispute whether discovery and trial should be limited to a sample of projects at this stage of litigation.[3] We decline to order sampling for the reasons summarized below.[4]

## *Background*

The following facts are derived from the parties' pleadings and Motion papers, including the accompanying declarations and exhibits. They are stated for purposes of deciding the Motions before us and not as findings of fact in this case.

Petitioners are married and jointly filed tax returns for the years in issue. They resided in Wisconsin when they filed their Petition. The

---

[2] The disposition of petitioners' Motion for Protective Order is a prerequisite to disposition of respondent's Motion to Compel the Taking of Deposition and Motion to Compel Responses to Interrogatories, which also are pending. We expect the parties to continue pretrial preparations including discovery and will order a future status report informing the Court of their progress in this case taking this Opinion into account and including in that status report the status of those two Motions before we decide them.

[3] We loosely refer to "projects" throughout this report to align with the relief sought by petitioners. We note that entitlement to research credits is based on evaluation of each "business component." § 41(d)(2)(A); Treas. Reg. § 1.41-4(b). A "business component" generally is defined as a product or process that the taxpayer either holds for sale, lease, or license or uses in its trade or business. § 41(d)(2)(B).

[4] This appears to be a recurring issue. *See, e.g.*, *Phx. Design Grp., Inc. v. Commissioner*, No. 4759-22 (T.C. Aug. 29, 2023) (order); *Feller v. Commissioner*, No. 11581-20 (T.C. Aug. 10, 2023) (order). Respondent referred us to these orders but of course they are not precedential.

[*3] U.S. Court of Appeals for the Seventh Circuit is the appellate venue for this case absent contrary stipulation by the parties. *See* § 7482(b)(1)(A), (2).

Ramesh C. Kapur is the founder, chief executive officer, president, and majority shareholder of KAI. KAI is a civil and environmental engineering firm that designs transportation and remediation systems. The research credits at issue are a function of KAI's claimed qualified research expenditures (QREs) flowing from KAI to petitioners. These claimed QREs are attributable to wages KAI paid its employees. It employed approximately 200–300 individuals during the years in issue.

KAI timely filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for the years in issue. Petitioners claimed flowthrough research credits totaling $238,958 with respect to KAI's projects. (They did not claim research credits with respect to all of KAI's projects.) Respondent disallowed research credits claimed by petitioners on their Forms 1040, U.S. Individual Income Tax Return, for the years in issue.

KAI, with the assistance of alliantgroup, LP, used a "variable sampling methodology" as part of its QRE calculation for the claimed research credits. This involved drawing a "stratified random sample" from a "sampling frame" (the 2,000–3,000 projects KAI undertook over the course of the years in issue), removing nonqualifying projects, and then determining eligibility for the research credits. The results of this "study" then were extrapolated to the remaining projects.

Before filing the pending Motions respondent issued informal discovery requests to petitioners. Petitioners limited their responses to KAI's largest projects: the Zoo Interchange Project and the Louisville ORB Project. Petitioners represented that these two projects account for over 72% of the claimed QREs. Formal discovery ensued.

Respondent's formal discovery requests—interrogatories and requests for production—seek information about the entire sampling frame. Relatedly, respondent seeks to interview 16 KAI employees, including Mr. Kapur, and petitioners request that we narrow the list to two to four individuals with knowledge of the projects petitioners selected. As to respondent's Motion to Compel Mr. Kapur's deposition petitioners do not object outright but want to limit its scope to "specific reasonable topics." In short, the parties are unable to agree on whether

**[*4]** discovery and trial should be limited to a sample of two to four projects, as petitioners urge, or include the entire sampling frame.

*Discussion*

I.    *Credit for Increasing Research Activities Under Section 41*

Section 41 generally allows taxpayers a research credit for increases to QREs over a "base amount." § 41(a), (c). To be eligible for a research credit taxpayers must demonstrate that they have performed "qualified research" during the tax year in issue. § 41(a)(1)(A), (b)(1), (d)(1). To determine whether an activity is qualified research, we employ a four-part test: (1) the section 174 test, (2) the technological information test, (3) the business component test, and (4) the process of experimentation test. § 41(d)(1); *Max v. Commissioner*, T.C. Memo. 2021-37, at *28 n.10 (citing *Siemer Milling Co. v. Commissioner*, T.C. Memo. 2019-37, at *19). The four-part test is applied separately to each "business component." § 41(d)(2)(A); Treas. Reg. § 1.41-4(b).

II.    *Burden of Proof*

Ordinarily, the burden of proof in cases before the Court is on the taxpayer. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The parties agree that petitioners have the burden at trial to prove entitlement to the claimed research credits. *See Feigh v. Commissioner*, 152 T.C. 267, 270 (2019) (first citing *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); and then citing *Segel v. Commissioner*, 89 T.C. 816, 842 (1987)).

III.    *Analysis*

Discovery must be proportional to the needs of the case. Rule 70(b)(1). We evaluate "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* We have broad discretion to limit the scope of discovery. *See* Rule 70(c)(1).

The parties dispute whether limiting discovery and trial to a sample at this juncture would improperly relieve petitioners of their burden of proof. Respondent contends that selecting a representative sample for discovery and trial is not possible without first considering preliminary information on all business components.

**[\*5]** The Government successfully argued similar points in *Bayer Corp. & Subs. v. United States*, 850 F. Supp. 2d 522 (W.D. Pa. 2012). In *Bayer*, the Government sought discovery on each business component before entertaining a sampling proposal. *Id.* at 528. The district court later rejected the plaintiff's sampling proposal because it did not identify all business components. *Id.* at 545–46. The court reasoned that "a sampling plan that would not identify all of the business components underlying the claimed QRE credits is not acceptable in the absence of agreement by the Government." *Id.* at 546. The court's holding in *Bayer*, while not binding on this Court, is instructive in the light of the comparable issues presented in this case.

In research credit cases it is common for parties to agree to sampling in lieu of extensive discovery and litigation with respect to each project. In some cases, the parties agree at the outset to try a sample that is binding on all projects. *See Suder v. Commissioner*, T.C. Memo. 2014-201, at \*15. In others, the parties agree to try a sample with the expectation that the Court's conclusions will enable the parties to resolve their differences with respect to the remaining projects. *See Little Sandy Coal Co. v. Commissioner*, T.C. Memo. 2021-15, at \*20–21, *aff'd*, 62 F.4th 287 (7th Cir. 2023); *Union Carbide Corp. & Subs. v. Commissioner*, T.C. Memo. 2009-50, 2009 WL 605161, at \*2, \*4, *aff'd*, 697 F.3d 104 (2d Cir. 2012). We also have selected the sampling methodology where the parties are agreeable to sampling but are unable to agree on a method. *See Tangel v. Commissioner*, No. 27268-13 (T.C. Feb. 22, 2018) (order). More unusual is the situation before us in which respondent objects wholesale to sampling.

Respondent disputes that the two largest projects—the Zoo Interchange Project and the Louisville ORB Project—are representative of the remaining projects. Petitioners counter that discovery related to 2,000–3,000 projects is not proportional to the amount in controversy. The flaw in petitioners' position is that they have not identified business components that would allow respondent to evaluate a sample before arguing for sampling. That is, petitioners have not given respondent, or us, enough information about all of the projects to determine whether a sample of two to four projects would be a representative sample.

Respondent also claims that we do not have discretion to order sampling at the request of petitioners if respondent objects. We disagree: We do have authority to limit discovery (including by ordering sampling) over the objection of a party. *See* Rule 70(c)(1). Nonetheless, we agree that exercising our discretion to limit the scope of discovery and trial in

**[\*6]** accordance with petitioners' Motion for Protective Order is improper at this stage. The only issue in this case is whether petitioners are entitled to the research credits claimed for the years in issue. Evaluating compliance with section 41 necessarily involves consideration of the underlying business components. And petitioners agree that they have the burden of showing entitlement to the claimed research credits. *See Feigh*, 152 T.C. at 270. As we have said previously, "[a]bsent an agreement between the parties, project sampling improperly relieves the taxpayer of its burden of proving entitlement to the research credit claimed." *Betz v. Commissioner*, T.C. Memo. 2023-84, at \*77 n.30 (citing *Bayer*, 850 F. Supp. 2d at 538, 545–46).

On balance, respondent's formal discovery requests are "reasonably calculated to lead to discovery of admissible evidence" with respect to petitioners' eligibility for the claimed research credits. *See* Rule 70(b)(2). Respondent's attempts to procure this information through informal means were unsuccessful. And respondent has no alternative method of acquiring this information. We therefore conclude that the significance and necessity of this discovery to the resolution of this case outweighs the expense to petitioners.

In addition, to the extent that petitioners believe that the expense is disproportionate they can limit their claim to research credits for QREs relating to the two projects they represent should be the sample. But if they claim more research credits, they must be prepared to substantiate QREs. And nothing bars petitioners from identifying information regarding business components in the sampling frame that then might allow respondent to agree to a representative sample.

We have considered all arguments made and, to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

*An appropriate order will be issued denying petitioners' Motion for Protective Order and requiring a status report in accordance with this Opinion.*